FILED
2025 Aug-14 AM 08:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| **MEOSHA GOODE,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | ______________________ |
| **THE LINCOLN NATIONAL LIFE INSURANCE COMPANY,** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |
| | ) | |

**COMPLAINT**

Plaintiff Meosha Goode ("Ms. Goode" or "Plaintiff") brings this action for violations of the Employee Retirement Income Security Act of 1974 ("ERISA") committed by The Lincoln National Life Insurance Company ("Lincoln National") in connection with the provision of an ERISA-governed disability benefit under Group Long Term Disability Plan (the "Plan") for associates of Brown-Forman Corporation ("Brown-Forman"), the employer of Ms. Goode and the sponsor of the Plan. In support of the relief requested herein, Ms. Goode alleges the following upon personal knowledge as to herself and as to all other matters upon information and belief based upon, *inter alia*, the investigation made by and through her attorneys:

## INTRODUCTORY STATEMENT

1. This is an action for legal and equitable relief seeking redress of violations of the Employee Retirement Income Security Act ("ERISA"). This suit is brought pursuant to 29 U.S.C. § 1132(a) to secure long-term disability ("LTD") benefits that are due to Ms. Goode under the Plan for associates of Brown-Forman Corporation ("Brown-Forman").

2. Ms. Goode seeks all benefits to which she may be entitled should this Court determine she is "disabled" under the "any occupation" definition of the Plan.

3. Ms. Goode seeks LTD benefits together with any disability-related benefit such as life insurance.

4. Ms. Goode's disabling medical conditions include coccydynia, hypertension, sacrococcygeal disorder, lumbar degenerative disc disease, polyneuropathy, chronic pain syndrome, type II diabetes, depression, and anorexia. They combine to disable her from any full-time employment.

5. According to her medical and physician records, the results of these conditions cause chronic lower back pain, pelvic, and coccygeal pain. These are functional limitations which prevent her from being able to work in any occupation. Ms. Goode can't work with distracting pain.

## JURISDICTION

6. This Court has jurisdiction over this action pursuant to 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331, as this action arises under ERISA.

7. Venue is appropriate in this District Court pursuant to 29 U.S.C. § 1132(e)(2), in that the employee welfare benefit plan at issue was at least partly administered in this District and Defendant may be found or resides in this District.

## PARTIES

8. Plaintiff Meosha Goode is a participant in the Plan and thus entitled to benefits available thereunder.

9. At the time of this filing, Plaintiff Meosha Goode resides in Leighton, Alabama, which is located in the Northwestern Division of the Northern District of Alabama.

10. Defendant Lincoln National Life Insurance Company ("Lincoln National") is a foreign corporation that does business by agent or otherwise in all counties in Alabama.

11. The Plan has designated and named Lincoln National as the claims fiduciary for benefits provided under the Policy. Lincoln National is a "fiduciary" of the Plan as that term is defined by 29 U.S.C. § 1002(21).

12. One of Lincoln National's designated agent for service of process is:

c/o The Prentice-Hall Corporation System, Inc.
541 South Lawrence Street

Montgomery, AL 36104

13. Lincoln National is an entity exercising authority or control respecting the management or disposition of Plan assets or the personnel exercising said authority over Plan assets.

14. Lincoln National is an entity providing services to the Plan at issue.

15. Lincoln National is an entity meeting ERISA's definition of a "party in interest" in this case as that term is defined in 29 U.S.C. § 1002(14).

**THE PLAN**

16. Per the Plan, it was and has been funded by a LTD insurance policy and certificate sponsored by Brown-Forman, the company which provided it for employees.

17. This group policy was purchased by Ms. Goode's employer, Brown-Forman, to confer certain benefits upon Ms. Goode and other employees.

18. As a result, this Plan qualifies as an employee welfare benefit plan as defined in 29 U.S.C. § 1002(1), and Ms. Goode qualifies as a participant and/or beneficiary under the Plan as that term is used in 29 U.S.C. § 1132.

19. Under the terms of the Plan providing for certain benefits accruing upon Ms. Goode becoming disabled, Ms. Goode is "disabled" as this Plan defines that term.

20. Under the terms of this Plan providing for certain benefits accruing upon the Plaintiff becoming disabled, Ms. Goode and other plan participants are entitled to receive disability insurance benefits upon proving their satisfaction of the following disability definition:

> **"Disability"** or **"Disabled"** means:
>
> 1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:
>
> i. that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and
>
> ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

21. The Policy defines "Own Occupation" as follows:

> **"Own Occupation"** means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Lincoln will consider the Covered Person's occupation as it is normally performed in the national economy.

22. The Policy defines "Any Occupation" as follows:

> **"Any Occupation"** means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.

23. The Policy defines "Material and Substantial Duties" as follows:

> **"Material and Substantial Duties"** means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.

## LINCOLN NATIONAL'S LIABILITY

24. The LTD policy at issue here defines the level of disability required for a participant or insured to be eligible for benefits based on the participant's eligibility for disability benefits under the Policy's "Any Occupation" definition.

25. The basis for Ms. Goode's claim for the LTD benefit resulted from a motor vehicle accident where Ms. Goode's vehicle was hit forcefully from behind. She was first treated in the emergency room for whiplash and complaints of neck and back pain. Weeks later physical exams by Dr. Karr revealed that Ms. Goode's tailbone was irregular in appearance. It had been fractured in the accident and the delayed treatment of this fracture led to an irregular shape and improper healing.

26. The improper healing of the fracture led to prolonged nerve damage. Ms. Goode developed neuropathy due to nerve damage and the nerve damage led to chronic pain all stemming from this auto accident.

27. Ms. Goode has received the following treatments for her pain, but none have eased her symptoms or provided any relief: spine surgery, physical therapy, massage therapy, epidural injections, and joint injections.

28. Ms. Goode's date of disability is February 3, 2022, and it coincides with the date of the noted motor vehicle accident.

29. Prior to being hired at Brown-Forman, Ms. Goode graduated from high school and has been employed since age 15 at various restaurants, as a hospice aid, by a daycare, and at various plants. She worked for Jack Daniels Cooperage, North American Lighting, and Wayne Farms. She has no other experience or skills other than working in plants or overseeing small children.

30. Ms. Goode was hired by Brown-Forman on December 14, 2020, as a technician.

31. The last day Ms. Goode worked at Brown-Forman was on January 31, 2022.

32. Ms. Goode submitted a claim for her Short-Term disability benefit, due to whiplash and a fractured coccyx, on January 31, 2022, and it was paid by Lincoln National.

33. After satisfying the 182-day elimination period, Lincoln National approved Ms. Goode's claim for her LTD benefit on August 29, 2022. Lincoln National determined that Ms. Goode was unable to perform the duties of her occupation as a Technician at Brown-Forman.

34. On November 22, 2023, Ms. Goode underwent a ganglion impar block; however, the procedure did not improve Ms. Goode's condition or pain levels.

35. On March 25, 2024, Lincoln National sent Ms. Goode's medical documentation to be reviewed by MLS National Medical Evaluation Services("MLS"). Ms. Goode's medical file was reviewed by Dr. Andrew Nava, a Physical Medicine and Rehabilitation physician.

36. MLS and Dr. Nava are biased as typically only reviews are provided for insurers. MLS works with physicians to provide reports that insure MLS has future business. Dr. Nava was sent the following medical documentation: December

18, 2023, Progress Notes from Shoals Health Group; January 26, 2024 Progress Notes from Huntsville Hospital; UR Reports from December 19, 2023 to January 5, 2024 from Dr. Andrew Nava; January 26, 2024 lab report from Med Lake; records from March 16, 2023 to March 13, 2024 labeled "Misc." He did not receive other medical information providing objective proof of disability nor did he ever examine Ms. Goode to determine if her pain complaints were credible.

37. Based only on the selective records given to him, Dr. Nava concluded that Ms. Goode's ability to sit is unrestricted, and that she can work 8 hours a day, 5 days a week. Dr. Nava noted that the "totality of these findings do support functional impairment that translates into restrictions and limitations from 11/21/2023 through 07/26/2024 but not beyond at this time[.]"

38. However, Dr. Nava did not note any limitations that would be caused by pain and completely informed pain given he had no means of evaluating pain. He never noted any evidence of medical improvement, nor did he explain why his opinion was more reliable than all treating physicians. He did acknowledge there must be some pain as he stated "The claimant requires functional limitations and restrictions to prevent further aggravation of the above medical conditions. The claimant should be reevaluated approximately six months from the last office visit (1/26/24), or on or about 7/26/24." He disregarded pain with sitting which was evident when Ms. Goode sat for more than a few minutes.

39. It was not true that Ms. Goode could sit continuously. Ms. Goode is distracted by pain after a short time of sitting. A functional capacity evaluation, involving personal examination and testing, later demonstrated that this contention of unrestricted sitting had no merit.

40. On May 1, 2024, Ms. Goode received a letter from Lincoln National stating that ongoing benefits, beyond August 2, 2024, were denied after it decided that Ms. Goode was no longer disabled under the Policy's definition. This decision was made without evidence available before August 2, 2024. That was unfair. On August 22, 2024, Lincoln National received copies of medical records from Shoals Primary Care (dated July 18, 2024 and August 20, 2024) and an order for lumbar spine imaging (dated July 21, 2022).

41. On May 1, 2024, Lincoln National determined that Ms. Goode did not meet the policy's "any occupation" definition of "disabled" because of the following restrictions from Dr. Nava:

> *Restrictions are as follows:*
> *Stand -- No longer than 15 minutes at a time; no more than 1 hour total in an 8 hour work day.*
> *Walk -- No longer than 15 minutes at a time; no more than 1 hour total in an 8 hour work day.*
> *Sit -- Unrestricted with position changes as needed for comfort.*
> *Push -- Up to 10 pounds occasionally bilateral upper extremities (BUE).*
> *Pull -- Up to 10 pounds occasionally BUE.*
> *Lift -- Up to 10 pounds occasionally BUE.*
> *Carry -- Up to 10 pounds occasionally BUE.*
> *Bend -- Occasionally.*
> *Stoop -- Occasionally.*
> *Kneel -- Occasionally.*
> *Climbing -- Never ladders, occasionally stairs*
> *BUE -- Unrestricted keyboarding, mousing, typing, gripping/grasping, and overhead, waist and below desk reaching.*

42. In the May 2024 termination letter, Lincoln National noted that Ms. Goode's restriction for sitting was "Unrestricted with position changes as needed for comfort." It also noted that Ms. Goode "can work 8 hours per day, 5 days per week, with the above restrictions.

43. The May 2024 termination letter also noted that a Vocational Specialist received Ms. Goode's file to conduct a vocational analysis of her current capabilities, training, education, and experience. The vocational analysis referred to the following occupations: Repair Order Clerk, Complier, Payroll Clerk, Food and Beverage Order Clerk, Order Clerk, Lock Assembler, Receptionist, Appointment Clerk, and Information Clerk.

44. When Lincoln National terminated Ms. Goode's claim on May 1, 2024, it contended that it wanted records after that date, which were not part of that claim determination. That of course means that its decision was not well founded with current medical records. In fact, the decision was not made with the support of another evaluation recommended by its own Dr. Nava before the termination date. That is not a full and fair review. This action was contrary to the plan document and the claim procedure regulation. It is unlawful.

45. On July 30, 2024, Ms. Goode appealed the denial of her LTD benefit.

46. In conjunction with that appeal request, Ms. Goode called Lincoln National to inform them that she would be sending additional medical records to be

included as a part of her appeal request. Lincoln National informed her that she had until September 7, 2024, to submit any additional information she wished to be considered for her LTD claim appeal. Thus, Lincoln would be making an initial claim decision with its appeal if it considered records not obtained with the termination of the claim. That would deprive an appeal challenging any misinterpretation or failure to consider those records. That is not a full and fair review.

47. Lincoln National then used tolling to delay its decision of the claim past 45 days without any valid or lawful grounds. Lincoln National took more time than was lawful as there was no type of "special circumstance" that would allow for such an extension. This violated the full and fair review. Lincoln National contended the need for information in the form of medical records from Ms. Goode allowed tolling. However the records were ignored, so it is hard to see how that was necessary. That reflects a preordained decision rather than a full and fair review.

48. On September 27, 2024, Lincoln National had an appeal Transferrable Skills Analysis ("TSA") completed for Ms. Goode. In that report, a Lincoln National internal employee used Dr. Richardson's review as the basis to determine that there were many jobs that Ms. Goode could perform. For example, the TSA asserted that Ms. Goode could perform the job of a payroll clerk and order clerk, despite the fact that she never performed such occupations and those roles require mathematical

skills that Ms. Goode does not possess. Her highest degree is a high school diploma.

49. While Lincoln National may contend that skills will transfer, the fact remains that these occupations are different than the safety and training occupation she performed for Wayne Farms. These occupations are much more secretarial and administrative. Ms. Goode's occupation previously was not a secretarial position requiring much data entry or keyboarding. She would not be hired without some past experience in these occupations and further training given the performance of that occupation was over 8 years ago. Accordingly, the TSA is erroneous as it has ignored key evidence.

50. The TSA disregarded the restrictions and limitations noted by Dr. Karr in not being able to meet the physical demand requirements of working a full-time occupation. All of the occupations listed do not allow for reclining, or change in positions every few minutes, and are too physically demanding for Ms. Goode given the sitting required.

51. In addition, the TSA assumed without evidence, skill sets which Ms. Goode does not possess. The TSA recommended occupations that required excellent speaking and oral comprehension, ultimately ignoring the fact that Ms. Goode is taking medications that distract from her focus, affect her ability to think coherently, and lead to varying degrees of headaches, dizziness, nausea, and vomiting. Not to mention that the positions available require Ms. Goode to sit continuously for 8

hours a day. Lincoln's Dr. Richardson did not agree she was capable of this. The TSA was inconsistent with the medical evidence and not based on vocational facts.

52. In September of 2024, Lincoln National sent Ms. Goode's medical file to Dr. Henry Richardson for a Peer Review. To evaluate Ms. Goode's case, he was provided with medical records ranging from January 17, 2020 until July 30, 2024. That report concluded that Ms. Goode's capacity to sit for prolonged periods of time was limited to "30 minutes at a time up to 6 hours per workday with the ability for self-positional change as necessary or comfort with use of donut for prolonged sitting." Lincoln National's list of jobs noted above do not permit this.

53. On October 19, 2024 Ms. Goode finally had results from a nerve conduction study objectively demonstrating the very nerve damage causing pain. She immediately submitted those records to Lincoln that day. Without considering the prior medical records and this nerve conduction study, Lincoln National made a decision on Ms. Goode's appeal for her LTD benefit on October 25, 2024. It flatly ignored those records which was unlawful. As aforementioned above in this Complaint, the information that Lincoln National contended allowed for tolling was ignored, despite it being received before the untimely decision on October 25, 2024. The nerve conduction study and report of Dr. Karr that was sent to Lincoln National on October 19, 2024 objectively demonstrated disability. The records submitted to

Lincoln National on October 19, 2024, were not submitted to its Dr. Richardson for review.

54. The October 2024 termination letter, Lincoln National falsely justified its determination by stating the following:

> We conducted a thorough and independent review of your entire claim. In summary, we acknowledge that you may continue to experience some symptoms associated with your condition. However, the information on file does not contain significant physical examinations, mental status examinations, diagnostic test results, or other forms of medical documentation to support that you are experiencing symptoms of such severity, frequency, and duration that they resulted in restrictions or limitations rendering you unable to perform the material and substantial duties of any occupation as of the change in disability definition (from own occupation to any occupation) on August 3, 2024 and forward.
>
> Having carefully considered all of the information submitted in support of your claim, it remains our opinion that based on the medical information contained in the file you do not meet the definition of total disability under the terms of Brown Forman Corporation's Long Term Disability Policy beyond August 2, 2024. As such, we are maintaining the denial of LTD benefits.

55. The appeal review conducted in October 2024 was defective as a matter of law. Lincoln National terminated Ms. Goode's claim during the "own occupation" phase of the claim and used the "any occupation" standard to terminate the claim. It did not consider all medical evidence up to the time of the decision nor did it conduct a full and fair review.

56. On February 24, 2025, a Functional Capacity Evaluation Report was completed based on an exam of Ms. Goode and her records. In that report, the examiner, Mr. Dave Bledsoe, recommended that four hours be the maximum amount of sitting each day, along with breaks for at least 15 minutes every two hours or as much as 10 minutes every hour, based on her condition. In his Report, Mr. Bledsoe

noted "Patient did not demonstrate the ability to function for a full working day" and that the examination "demonstrated severe impairments with all tested physical domains."

57. That Functional Capacity Exam was sent to Dr. Aaron Karr, who agreed with the functional restrictions listed by Mr. Bledsoe and that it was consistent with Dr. Karr's findings.

58. Although Ms. Goode's coccyx fracture was initially difficult to detect, eventually it appeared as an irregular sharp secondary to an old fracture/trauma. Dr. Karr has examined Ms. Goode and has consistently noted Ms. Goode's chronic pain and how it is related to the old fracture in Ms. Goode's coccyx. In addition, Dr. Karr has noted that the tailbone fracture was a result of the car accident that Ms. Goode experienced, and that the delayed healing of the fracture has caused its irregular appearance and Ms. Goode's chronic coccyx pain.

59. Despite Ms. Goode's consistent and substantiated claims of pain, Dr. Richardson (who conducted her Peer Review) dismissed Ms. Goode's complaints of pain as "exaggerated and disproportionate" despite not having a legitimate medical or scientific basis to assert that opinion absent a physical examination to evaluate the credibility of Ms. Goode's complaints of pain.

60. In addition to that unsubstantiated claim, Dr. Richardson's report is error laden. It omits critical health records, lists incorrect dates, lists incorrect names,

lists no basis to disagree with the observations of an irregular coccyx (which demonstrates the fracture), provides no basis to disregard Dr. Karr's clinical exams, and fails to note that Ms. Goode has already tried unsuccessfully using a sacral donut and has tried two memory foam pillows due to her pain.

61. Since the denial and termination of her LTD benefit, Ms. Goode, through Counsel, requested "relevant" documentation from Lincoln National pursuant to 29 C.F.R. § 2560.503-1(h)(2)(iii) and after seeing the above problems, submitted a second appeal for Ms. Goode's LTD benefit, to allow Lincoln National to correct these errors. This was presented by Counsel on April 25, 2025. It was explicitly stated that the April 2025 appeal was also a demand in lieu of litigation.

62. The April 2025 appeal was transmitted via Facsimile and First-Class Mail on April 24, 2025, and was received on that date.

63. Lincoln National did not respond to the April 2025 appeal, and as a result, she files this Complaint.

64. The documents identified thus far by Ms. Goode as being part of ERISA Administrative Record (and thus bearing the bates range "Goode 0001-0835") establish numerous breaches and errors committed by Lincoln National during the course of administering Ms. Goode's different claims, including:

(a) The targeting of Ms. Goode's claims for denial because ERISA governs;

(b) The failure by Lincoln National to take meaningful measures to insulate its claims process from its inherent conflict under the case *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008), and instead allowing its profit motive to influence its claims administration for Ms. Goode;

(c) Taking an adversarial posture against Ms. Goode instead of a fiduciary posture by searching for ways to avoid paying part or all of her claim;

(d) Failing to adhere to the terms of the Plan, including as to the timely review, acceptance, and processing of a claim for benefits;

(e) Failing to conduct an adequate investigation, and not considering and/or according proper weight to relevant, supportive information;

(f) Failing to adhere to the terms of the Plan regarding the proper procedures and justifications behind the delay and extension of claim decisions;

(g) Failure to accord the proper weight to Ms. Goode's medical providers and other examiners who personally examined Ms. Goode;

(h) Purposefully limiting and curtailing the review of its medical personnel and otherwise improperly exerting influence on them to opine against payment of benefits;

(i) Unreasonably and arbitrarily overruling the professionals who personally examined Ms. Goode or allowing any of them the opportunity to "peer review" Lincoln National's internal medicinal resource;

(j) Failing to give Ms. Goode's claim a full review as required by the plan and claim procedure regulation;

(k) Unreasonably and arbitrarily overruling its own prior determinations that Ms. Goode was disabled without there being any medical evidence of substantial medical improvement in Ms. Goode's condition.

65. Despite Ms. Goode's established disability and entitlement to coverage under the terms of the Plan, Lincoln National determined that Ms. Goode was not "disabled" to preclude her from "any occupation" and, as a result, that she did not qualify for LTD benefits.

66. As set forth above in connection with Lincoln National's fiduciary breaches, Lincoln National's claim decision was the product of a conflict of interest whereby it allowed its own financial interests to supersede its fiduciary obligations

to Ms. Goode. Under *Glenn*, this presents an additional reason for application of a *de novo* standard to their decision. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008).

67. This conflict of interest further calls into question the credibility of Lincoln National's claims personnel and reviewers.

68. Lincoln National considered the applicability of ERISA before making its decision. This presents an additional reason for application of a *de novo* standard to their claim decision, as to excuse Ms. Goode from further utilization of Lincoln National's claim process.

69. Lincoln National did not provide Ms. Goode with a meaningful opportunity for a full and fair review of this claim for benefits as required by 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1, and instead actively tried to subvert Ms. Goode's ability to protect her right to such a review by substantiating their claims decision based on incomplete reviews.

70. Lincoln National's decision process did not comport with 29 U.S.C. § 1133's requirement that any notice of the denial must contain the specific reasons for such denial, written in a manner calculated to be understood by the participant, and must comport with Department of Labor regulations.

71. Ms. Goode has exhausted all Plan remedies even though Lincoln National's abject failure to adhere to Plan terms or ERISA requirements and regulations did not require it. As such, this case is ripe for judicial review.

72. Ms. Goode is entitled to *de novo* review of her claim due to the failure of Defendant to conduct a full and fair review.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Meosha Goode respectfully requests this Court find jurisdiction and venue appropriate, and after trial, grant the following relief:

(a) For the sum of all past due and wrongfully withheld long term disability benefits and continuing until the present date;

(b) For reinstatement of the right to future long term disability insurance benefits;

(c) For an award of attorney's fees;

(d) For reinstatement of the right to any other benefits inclusive of life insurance if such is in place;

(e) For equitable relief inclusive of entry of an order barring the Defendant from unfair actions during the claim process;

(f) For such other further proper and/or different relief as may be just and proper.

Respectfully submitted,

*/s/ David P Martin*
David P. Martin, Esq.
(ASB-3500-M68D)
THE MARTIN LAW GROUP, LLC
**Attorney for Plaintiff**
P.O. Box 20087
Tuscaloosa, AL 35402
Phone (205) 343-1771
Facsimile (205) 343-1781
*david@erisacase.com*

**Plaintiff's Address:**

Meosha Goode
c/o The Martin Law Group, LLC
P.O. Box 20087
Tuscaloosa, AL 35402

**Defendant's Address:**

Lincoln National Life Insurance Company
c/o The Prentice-Hall Corporation System, Inc.
541 South Lawrence Street
Montgomery, AL 36104

## REQUEST FOR SERVICE BY CERTIFIED MAIL

Please serve the defendant, **LINCOLN NATIONAL LIFE INSURANCE COMPANY**, by certified mail pursuant to Federal Rules of Civil Procedure 4(e)(1).

*/s/ David P Martin*

David P. Martin, ASB-3500-N68D
**The Martin Law Group, LLC**
**Attorney for Plaintiff**
P.O. Box 20087
Tuscaloosa, AL 35402
Phone (205) 343-1771
Facsimile (205) 343-1781
david@erisacase.com